# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| SAMUEL MOSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 4:18-CV-00189-NCC** |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM AND ORDER</u>

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Samuel Moss ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II, 42 U.S.C. § 401, *et seq.* Plaintiff filed a brief in support of the Complaint (Doc. 12), Defendant filed a brief in support of the Answer (Doc. 17), and Plaintiff filed a reply brief (Doc. 18). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 8).

### I. PROCEDURAL HISTORY

Plaintiff filed his application for DIB on September 25, 2014 (Tr. 10).[1] Plaintiff was initially denied on December 1, 2014, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 164–71). After a hearing, by decision dated March 29, 2017, the ALJ found Plaintiff not disabled (Tr. 7–29). On December 5, 2017, the Appeals Council denied Plaintiff's request for review (Tr. 1–4). As such, the ALJ's decision stands as the final decision of the Commissioner.

---

[1] Plaintiff's previous application for DIB was denied on July 16, 2014 (Tr. 122–37).

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of July 17, 2014, through his date last insured of December 31, 2016 (Tr. 12). The ALJ further found Plaintiff has the severe impairments of diabetes mellitus; hypertension and evidence of ischemia on cardiac testing; obstructive sleep apnea; asthma with decreased pulmonary functioning on testing; degenerative joint disease of the knees with status post right knee surgery and replacement while in high school; lumbago with degenerative disc disease of the lumber and cervical spines, each with herniation; bipolar disorder; anxiety disorder with panic and agoraphobia; and obesity (Tr. 12). However, the ALJ determined that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13–16).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform sedentary work[2] with the following limitations (Tr. 16). He is able to lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds on a more frequent basis (*Id.*). He is able to sit 6 out of 8 hours as well as stand or walk 2 out of 8 hours, for a combined total of 8 out of 8 hours (*Id.*). There is to be no ambulating over uneven surfaces, such as rutted construction sites, without an ambulation assistive device (*Id.*). In addition, there is to be no ambulating over slippery surfaces, such as wet shop floors or icy loading docks (*Id.*). Plaintiff may use a hand held assistive device for prolonged ambulation in excess of 25 meters (*Id.*). He may not climb ladders, ropes, or scaffolds (*Id.*). Plaintiff is limited to occasional postural activities of stooping, kneeling, crouching, crawling, and climbing of ramps and stairs,

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is necessary in carrying out job duties." 20 C.F.R. § 416.967(a).

and he is also limited to occasional overhead reaching (*Id.*). There is to be no concentrated exposure to pulmonary irritants such as smoke, dusts, odors, fumes, gases, and poor ventilation (*Id.*). There is to be no concentrated exposure to extreme heat, extreme cold, or to extreme humidity (*Id.*). He must avoid hazards of dangerous unprotected heights and dangerous unprotected machinery (*Id.*). Plaintiff is able to understand, remember, and carry out simple tasks that are routine (*Id.*). He is able to use judgment in making commensurate work-related decisions (*Id.*). He is able to interact appropriately with the general public occasionally and superficially and away from crowds, and he is able to interact appropriately with coworkers occasionally and appropriately with supervisors (*Id.*). Plaintiff is limited to a reduced stress work environment defined as having to make occasional commensurate decisions and no more than occasional changes in routine in a normal work setting (*Id.*).

The ALJ found Plaintiff unable to perform any past relevant work (Tr. 22). However, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including semiconductor bonder, eyewear assembler, and wafer breaker (Tr. 22–23). Thus, the ALJ concluded Plaintiff is not disabled (Tr. 24). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision (Doc. 12).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590–91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.

20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20

C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as

"any impairment or combination of impairments which significantly limits [claimant's] physical

or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may

be terminated at step two only when the claimant's impairment or combination of impairments

would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484

F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir.

2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or

equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d).

If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is

per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20

C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to

establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step

four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ

will review a claimant's RFC and the physical and mental demands of the work the claimant has

done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20

C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the

Commissioner has the burden of production to show evidence of other jobs in the national

economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874

n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The

ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises one issue, arguing that the ALJ erred at Step 3 in finding Plaintiff did not meet Listing 1.02 based on the ALJ's conclusion that Plaintiff could not ambulate effectively (Doc. 12 at 1). For the following reasons, the Court finds that the ALJ's decision that Plaintiff is not disabled is based on substantial evidence and is consistent with the Regulations and case law.

### A. Listing 1.02

Listing 1.02 concerns the major dysfunction of a joint. 20 C.F.R. Part 404, Subpart P, App. 1, § 1.02, Listing of Impairments. This listing provides in relevant part that a claimant is presumptively disabled if his impairments satisfy four requirements:

1.02 *Major dysfunction of a joint(s) (due to any cause):* Characterized by [1] gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and [2] chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and [3] findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. [4] Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b. . . .

*Id.*[3] "'For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.'" *Igo v. Colvin*, 839 F.3d 724, 729 (8th Cir. 2016) (emphasis in original) (quoting *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990) (superseded by statute on other grounds). The severity standards for Listing-level impairments are intentionally high, because "the listings [for adults] were designed to operate as a presumption of disability that makes further inquiry unnecessary" and ends the sequential process. *Holtel v. Colvin*, No. 2:13-CV-112 CEJ, 2015 WL 417534, at *11 (E.D. Mo. Feb. 2, 2015) (quoting *Sullivan*, 493 U.S. at 532). The burden of proof to establish that an impairment or combination of impairments meets or equals a listing rests squarely on Plaintiff. *See Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010) (citing *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)).

In this case, the ALJ specifically found Plaintiff did not meet Listing 1.02 (Tr. 13). The ALJ stated, "Particular attention was given to medical listing 1.02" (*Id.*). However, the ALJ determined "the specified criteria required of the listing was not demonstrated by the available medical evidence" (*Id.*). Specifically, the ALJ concluded without further elaboration that "the evidence does not demonstrate that the claimant has the degree of difficult in ambulating as defined in 1.00B2b" (*Id.*). Plaintiff's arguments center on the inability to ambulate effectively and the consideration of Plaintiff's obesity in the Listing 1.02 analysis (*see* Docs. 12, 18). However, the Court finds Plaintiff has not met his high burden of proof to establish he meets Listing 1.02.

---

[3] Plaintiff does not allege any impairment based on a major peripheral joint in his upper extremities. *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 1.02(B).

**1. Inability to Ambulate Effectively**

To satisfy any of the several musculoskeletal Listings, Plaintiff must demonstrate a loss of function, which includes "the inability to ambulate effectively on a sustained basis for any reason . . . ." 20 C.F.R. Part 404, Subpart P, App. 1, § 1.00(B)(2)(a). As noted above, Plaintiff must establish that the dysfunction of one major peripheral joint results in an "inability to ambulate effectively" in order to satisfy the fourth requirement of Listing 1.02. *Id*. § 1.02(A). The Regulations further define the inability to ambulate effectively as follows:

b. What We Mean by Inability To Ambulate Effectively

(1) Definition. Inability to ambulate effectively means an ***extreme*** limitation of the ability to walk; i.e., an impairment(s) that ***interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities***. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . . .

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the ***inability*** to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id*. § 1.00(B)(2)(b) (emphasis added). The regulations further discuss hand-held assistive devices, as cross-referenced in § 1.00(B)(2)(b)(1), as follows:

4. Hand-held assistive devices. When an individual with an impairment involving a lower extremity or extremities uses a hand-held assistive device, such as a cane, crutch or walker, examination should be with and without the use of the assistive device unless contraindicated by the medical judgment of a physician who has treated or examined the individual. The individual's ability to ambulate with and

without the device provides information as to whether, or the extent to which, the individual is able to ambulate without assistance. The medical basis for the use of any assistive device (e.g., instability, weakness) should be documented. The requirement to use a hand-held assistive device may also impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling.

*Id*. § 1.00(J)(4). The Agency determines whether an individual can ambulate effectively "based on the medical and other evidence in the case record, generally without developing additional evidence . . . ." *Id*. § 1.00(B)(2)(a). For the following reasons, the Court finds Plaintiff has not met his burden of establishing that he is unable to ambulate effectively.

While the ALJ did not elaborate on his Listing 1.02 analysis at Step 3, Plaintiff argues that because the ALJ "agreed that [Plaintiff] needed a walker to ambulate and [Plaintiff] was unable to walk over uneven surfaces without assistance" in formulating his RFC, the ALJ's conclusion that Plaintiff could ambulate effectively at Step 3 is not consistent with these findings (Doc. 12 at 1, 7–11). Plaintiff refers to the ALJ's RFC, in which the ALJ limited Plaintiff to sedentary work with limitations, including no ambulating over uneven surfaces such as rutted construction sites without an ambulation assistive device, no ambulating over slippery surfaces, and finding that Plaintiff may use a hand-held assistive device for prolonged ambulation in excess of 25 meters (*Id*. at 7, 10–12; Tr. 16). Plaintiff also refers to the ALJ's statement that Plaintiff's "use of a walker," in addition to other symptoms, "would preclude him from more than sedentary work with the postural and manipulative limitations outlined [in the RFC]." (Doc. 12 at 10, Tr. 19). Therefore, Plaintiff argues the ALJ's opinion is internally inconsistent.

The Court does not agree with Plaintiff that any alleged error the ALJ committed was not harmless (Doc. 12 at 9). Even if an ALJ's decision contains internal inconsistencies, the error must be prejudicial to justify remanding the ALJ's opinion. *See Reeves v. Colvin*, 650 F. App'x

298 (8th Cir. 2016) (citing *Samons v. Astrue*, 497 F.3d 813, 821 (8th Cir. 2007) (holding "[t]o warrant remand, a claimant must show prejudice from an error during administrative proceedings."). *See also Lacroix v. Barnhart,* 465 F.3d 881, 887 n.3 (8th Cir. 2006) (rejecting the plaintiff's contention that remand was necessary based on "internal inconsistenc[ies]" between the ALJ's findings in different steps of the sequential process, reasoning "[e]ach step in the disability determination entails a separate analysis and legal standard."). Even assuming the ALJ's decision contains inconsistences, because Plaintiff cannot show the case would have been decided differently, the Court finds any alleged inconsistency does not constitute harmful error. *See Byes v. Astrue*, 687 F.3d 913, 917–18 (8th Cir. 2012) (since case would not have been decided differently in absence of ALJ's claimed error, any error was harmless); *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (while there were inconsistencies in ALJ's opinion, the "unfortunate" error "[did] not require reversal since it had no bearing on the outcome"); *Tomlin v. Colvin*, No. 4:13CV2424 SPM, 2015 WL 58934, at *18 (E.D. Mo. Jan. 5, 2015) (discrepancies in different steps of the ALJ's sequential process did not warrant remand because they had no effect on the outcome of the case).[4] Instead, as the Court explains below, the overall conclusion on Listing 1.02 is supported by substantial evidence. *See Igo*, 839 F.3d at 729 (quoting *Boettcher v. Astrue*, 652 F.3d 860, 864 (8th Cir. 2011)) ("[W]e will uphold the ALJ's decision so long as 'substantial evidence in the record supported the ALJ's determination' that [the plaintiff's] impairments did not meet or equal the criteria of any listed impairment.").

Plaintiff has not established that he is unable to walk without a walker or other hand-held assistive device. While the ALJ did acknowledge Plaintiff's use of a walker (Tr. 19), the use of a walker alone is not sufficient to meet Listing 1.02. Based on one example provided in the

---

[4] In fact, the complete failure to even address or mention Listing 1.02 in an opinion is not reversible error if the record supports the overall conclusion. *See Igo v. Colvin*, 839 F.3d 724, 728–29 (8th Cir. 2016) (citing *Brown v. Colvin*, 825 F.3d 936, 940 (8th Cir. 2016)).

Regulations, Plaintiff must show "the **inability** to walk without the use of a walker." 20 C.F.R. Part 404, Subpart P, App. 1, § 1.00(B)(2)(b)(2) (emphasis added). Plaintiff's argument assumes the ALJ, in finding Plaintiff uses a walker and thereby limiting him to sedentary work, implicitly found Plaintiff had inability to walk without it (Doc. 12 at 11, 12). However, the Court is not persuaded by the logical leap Plaintiff makes, as the text of the ALJ's decision does not support this interpretation. First, the ALJ's RFC recognizes that Plaintiff "may use a hand held assistive device for prolonged in ambulation in excess of 25 meters" (Tr. 16). Plaintiff argues based on this statement that the ALJ "*required* an assistive device for ambulation in excess of 25 meters" and "*agreed [Plaintiff] would be unable* to ambulate more than 82 feet without his walker" (Doc. 12 at 12) (emphasis added). The ALJ's use of the permissive word "may" renders this argument without merit.[5] Contrary to Plaintiff's contention, the ALJ did not state in his RFC analysis that Plaintiff "needs" or is unable to walk without a walker (*see* Tr. 16–22). Instead, the ALJ merely recognizes Plaintiff uses it and formulated the RFC with that in mind (Tr. 18, 19) (referencing the claimant's "use" of a walker). Second, the ALJ concluded Plaintiff could occasionally crouch, crawl, and climb (Tr. 16), which is inconsistent with an inability to walk or "insufficient lower extremity function." 20 C.F.R. Part 404, Subpart P, App. 1, § 1.00(B)(2)(b)(1). Third, the ALJ found, for example, that Plaintiff could lift and carry 10 pounds occasionally, which would require Plaintiff to use his one or both of his upper extremities (Tr. 16). This contradicts any suggestion that the ALJ found Plaintiff wholly unable to ambulate "without the use a hand-held assistive device[] that limits the functioning of both upper extremities." 20 C.F.R. Part 404,

---

[5] Plaintiff's argument also seems to assume that when the ALJ references assistive devices in his final RFC, the ALJ meant a walker. However, Plaintiff testified he uses other devices, such as a cane (Tr. 48). Therefore, any implication that the ALJ's RFC limitations included a requirement that Plaintiff use a walker specifically is not supported by the language of the RFC itself. A cane, unlike a walker, does not restrict the use of both upper extremities, as the Regulations recognize. *See* 20 C.F.R. Part 404, Subpart P, App. 1, §1.00(B)(2)(b)(2).

Subpart P, App. 1, § 1.00(B)(2)(b)(1); *Cf. id.* § 1.00(J)(4) (noting a requirement to use a hand-held assistive device may impact the RFC because extremities would not be available for lifting and carrying). *See Kimberly B. v. Berryhill*, No. 17-CV-5211 (HB), 2019 WL 652418, at *7 (D. Minn. Feb. 15, 2019) (when the plaintiff reported she needed a cane or walker to walk despite no documented medical necessity, noting the ALJ appropriately formulated sedentary RFC to account for the Plaintiff's claimed need to use assistive devices by limiting her to occasional use of stairs and ramps, excluding walking on uneven surfaces, restricting her to sit/stand option, and allowing for the use of an assistive device if she had to walk more than fifty feet). *See also Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) ("In conducting our limited and deferential review of the final agency determination under the substantial-evidence standard, we must view the record in the light most favorable to that determination. . . . [W]e must strive to harmonize statements where possible; we may neither pick nits nor accept an appellant's invitation to rely upon perceived inconsistencies.").

Importantly, moreover, a review of the medical record does not establish that Plaintiff has a need or "extreme limitation" resulting in an "inability" to ambulate without the use of a walker or any other assistive device. Plaintiff does report keeping multiple assistive devices around for use when needed (Tr. 48), and counsel correctly notes that a variety of medical professionals noted in their records that Plaintiff presented to a variety of appointments with a walker (Doc. 12 at 9–11; Tr. 382, 389, 422–23, 538, 583, 660, 668, 709, 773, 777, 836).

However, Plaintiff produces no evidence that any medical professional deemed his use of a walker or any other assistive device to be medically necessary or a requirement. *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 1.00(J)(4) (discussing the "requirement" to use a hand-held assistive device in the context of medical judgment of a physician). For example, while Plaintiff

testified a walker was prescribed, he has produced no evidence in support of this testimony. *See*, *e.g.*, *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) ("We also find no medical records or opinions documenting [the plaintiff's] use of a cane as being medically necessary"); *Smith v. Astrue*, No. 4:10 CV 1319 DDN, 2011 WL 4445834, at \*6 (E.D. Mo. Sept. 26, 2011) (holding the plaintiff's own statements supporting the need for an assistive device were insufficient and finding while treater's notes indicated the plaintiff had been using a hand-held assistive device, "no treating physician indicated that she needed one"); *Gomilla-Levy v. Astrue*, No. 4:07CV1648 AGF, 2009 WL 426455, at \*10 (E.D. Mo. Feb. 19, 2009) (absence of any prescription for a cane or walker was one factor in holding the plaintiff did not meet his burden to establish the inability to ambulate effectively under Listing 1.02); *D'Angelo v. Astrue*, No. 4:09CV0386 TCM, 2010 WL 1257682, at \*25 (E.D. Mo. Mar. 25, 2010) (Listing 1.02 not met in part because the records were "devoid" of any use of a walker being recommended). *Accord Kimberly B.*, 2019 WL 652418, at \*7 (despite the plaintiff's testimony that she could not walk without a cane or walker and evidence that her provider had prescribed an assistive device because the plaintiff requested one, finding the plaintiff did not establish that an assistive device was medically necessary).

Nor has Plaintiff cited any evidence in the record demonstrating that any medical professional indicated he is unable to walk without it. *Cf.* 20 C.F.R. Part 404, Subpart P, App. 1, § 1.00(J)(4) (noting the claimant should be examined without use of assistive device to assess his or her ability to ambulate unless contradicted by medical judgment of treating physician). Other than Plaintiff's own reports that he needs to use a walker, there is no clear indication in the medical records that any doctor included any limitation on his ability to ambulate, whether by use of assistive device or otherwise, including on uneven terrain or steps. *See Schultz v. Astrue*, 479 F.3d 979, 982 (8th Cir. 2007) (noting in analysis of §1.00(B)(2)(b)(1) that doctors never

imposed any specific limitation on the plaintiff's ability to walk, including on rough or uneven

surfaces); *Wegmann v. Astrue*, No. 4:11 CV 2185 JAR/DDN, 2012 WL 6892804, at *9 (E.D.

Mo. Dec. 27, 2012) (holding Listing 1.02 not met in part because while doctor reported the

plaintiff needed an assistive device, doctor did not opine that the plaintiff "could not walk");

*D'Angelo*, 2010 WL 1257682, at *25 (Listing 1.02 not met in part because no physician placed

any permanent restriction on the plaintiff's walking or ambulation). This conclusion is

consistent with decisions throughout this Circuit. *Accord Coolley v. Colvin*, No. CV 15-5001-

JLV, 2016 WL 1171519, at *5 (D.S.D. Mar. 24, 2016) (despite the plaintiff's reports that she

used a cane, walker, and motorized scooter, holding Listing 1.02 not met when there is no

evidence the plaintiff cannot walk without the assistance of a walker because, rather, "it is her

preference from time-to-time to use an assistive device"); *Sims v. Astrue*, No. 12-0163-CV-W-

NKL-SSA, 2012 WL 5386065, at *5 (W.D. Mo. Nov. 2, 2012) (despite multiple physician

reports that the plaintiff had increased difficulty with walking and pain due to her degenerative

joint disease, holding medical evidence was insufficient to prove an inability to ambulate

effectively, and therefore Listing 1.02 was not met, when "the record reveals no definitive

statements by [the plaintiff's] treating physicians that [he] is unable to walk 'without the use of a

hand-held assistive device(s) that limits the functioning of both upper extremities.'").

Moreover, substantial evidence in the record demonstrates Plaintiff's use of an assistive

device, including a walker, is intermittent. For example, while Plaintiff points to records from

Maudanne Parsley, LPC, documenting Plaintiff's use of walker (Doc. 12 at 10), the records

immediately surrounding the same records Plaintiff cites include no indication that he was using

walker or other assistive device and even note times when his gait was normal. *See*, *e.g.*, Tr. 768

("Gait was smooth" and no walker noted), 773 ("Sam is using his walker today"), 775 (no walker

noted and smooth gait), 779 (no walker noted), 786 (no walker noted and smooth gait), 790

(same), 797 (same), 866 (same). Multiple doctor's visits do not note the use of any assistive

device at various times in 2014, 2015, 2016, and 2017 (*See id.*; *see also*, *e.g.*, *See*, *e.g.*, Tr. 579–

582, 650–64, 691–93). *See Gleghorn v. Colvin*, No. 4:14-CV-426-CEJ, 2015 WL 1180358, at

*13 (E.D. Mo. Mar. 13, 2015) (Listing 1.02 not met when the plaintiff did not "universally" use

a hand-held assistive device). *Accord Kimberly B.*, 2019 WL 652418, at *7 (finding the plaintiff

did not medically require a cane or walker when medical records demonstrated she presented

without a device on occasion, albeit with a slow gait); *Dereschuk v. Colvin*, No. 15-CV-86-TNL,

2016 WL 9454329, at *21 (D. Minn. Mar. 28, 2016), *aff'd sub nom. Dereschuk v. Berryhill*, 691

F. App'x 292 (8th Cir. 2017) (emphasis in original) (finding Listing 1.02 not met when

Plaintiff's use of a cane was "intermittent and at his own discretion," reasoning "[w]hile Plaintiff

may have some limitation on the ability to walk, ineffective ambulation requires the *extreme*

limitation of walking ability that interferes *very seriously* with his ability to conduct activities

independently. . . . Plaintiff's intermittent use of a cane shows that he has at least sufficient lower

extremity functioning to permit ambulation without use of a cane").

In addition, the ALJ's findings based on the medical records further demonstrate Plaintiff

does not have an extreme limitation that interferes very seriously with his ability to

independently initiate, sustain, or complete activities. First, for example, the ALJ discussed

normal medical findings that are inconsistent with an extreme limitation. The ALJ noted that

despite Plaintiff's back and knee pain and obesity, the majority of Plaintiff's physical

examinations were devoid of any evidence showing a significant degree of muscle atrophy,

paravertebral muscle spasms, sensory or motor loss, reflex abnormality, or gait disturbance (Tr.

18, 19). Thus, the ALJ concluded that these medical findings "were an indication that claimant

continues to move about on a fairly regular basis" (Tr. 18). The ALJ specifically found that while Plaintiff uses a walker, he is not "not lacking in strength to walk" (Tr. 19), i.e., that he did not have insufficient lower extremity functioning to permit independent ambulation. *See* 20 C.F.R. Part 404, Subpart P, App. 1, §1.00(B)(2)(b)(1). While Plaintiff argues his medical records show a slow, cautious, and unsteady gait supporting a Listing (Doc. 12 at 4, 10),[6] the medical records routinely note Plaintiff's normal gait, strength, range of motion, and ambulation (Tr. 18–20, 389, 414, 417, 420, 423, 425, 429, 553, 571, 651, 653, 655, 660, 658, 671, 668, 698). Such normal findings are inconsistent with an extreme limitation on the ability to walk and support the ALJ's conclusions that Listing 1.02 was not met and Plaintiff was not disabled. *See*, *e.g.*, *Simmons v. Colvin*, No. 4:14-CV-1670 NAB, 2015 WL 7758373, at *4 (E.D. Mo. Dec. 2, 2015) (numerous visits with normal range of motion, muscle strength, and reflexes supported finding that the plaintiff did not meet Listing 1.02 despite doctor's requirement that she use a cane); *Johnson v. Astrue*, No. 1:11CV207 LMB, 2013 WL 461549, at *9 (E.D. Mo. Feb. 7, 2013) (denying the plaintiff's argument that his conditions met Listing 1.02 in part because his medical records as a whole indicated that his gait and station were normal despite presenting with a limp at times); *Lowrey v. Astrue*, No. 4:09CV0519 TCM, 2010 WL 3718095, at *17–18 (E.D. Mo. Sept. 14, 2010) (treating physician's reports in medical records of the plaintiff's 5/5 muscle strength in lower extremities, normal gait, and normal range of motion in joints supported conclusion that 1.02 was not met); *Gomilla-Levy*, 2009 WL 426455, at *10 (even a singular notation in the medical records that the plaintiff walked with a normal gait supported the

---

[6] Plaintiff also points to records demonstrating he falls in support of his argument (Doc. 12 at 3, 6). *But see Dereschuk*, 2016 WL 9454329, at *21 (Listing 1.02 not met despite the plaintiff's reports that he needed to use an assistive device for walking because his legs give out and he falls since medical examinations demonstrated normal gait, station, and range of motion). *See also*, *e.g.*, Tr. 421 (Plaintiff reported he fell in parking lot while walking when legs became weak due to chest pains after arguing with his wife).

conclusion that the plaintiff did not meet his burden to establish the inability to ambulate effectively under Listing 1.02). And despite complaints of knee pain and osteoarthritis, Plaintiff was told he did not need surgery (Tr. 382). *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (conservative course of treatment weighs against a finding of disability).

Second, while the Plaintiff's activities of daily living are limited as Plaintiff notes (Doc. 12 at 12), some of Plaintiff's activities contradict a finding that Plaintiff's impairments interfere very seriously with his ability to initiate, sustain, or complete activities such that he is totally disabled. 20 C.F.R. Part 404, Subpart P, App. 1, § 1.00(B)(2)(b)(1). *See also Igo*, 839 F.3d at 728 ("We may not reverse simply because we would have reached a different conclusion than the ALJ or because substantial evidence supports a contrary conclusion"); *Goff*, 421 F.3d at 789 ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision"). For example, the ALJ noted that Plaintiff prepares meals and handles his own medical care (Tr. 15). Significant to the ALJ, Plaintiff testified he regularly drove to town, a 24-mile round trip, two to three times a week to shop without the assistance of others, and he drives by himself to his medical appointments, which could be up to a 100-mile roundtrip (Tr. 15, 17, 44–46). *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 1.00(B)(2)(b)(1)(2) (to ambulate effectively, a plaintiff "must have the ability to travel without companion assistance to and from a place of employment or school.") He also testified to filling and lifting milk jugs with water so he could exercise, reported exercising by bringing in wood, and reported doing some yard work (Tr. 18, 79, 790, 863, 897). Moreover, Plaintiff testified he can take trash out with a cane (Tr. 48).[7] The ALJ also noted Plaintiff testified he assists his former in-laws around the house,

_____

[7] Plaintiff correctly notes the ability to walk about one's home without the use of an assistive device does not in and of itself constitute effective ambulation (Doc. 18 at 1). *See* 20 C.F.R. Part

including with household chores such as cleaning and replacing bulbs in high or hard-to-reach places, and he sometimes also runs errands for them or completes their grocery shopping (Tr. 17–18, 20, 60–62). Plaintiff reported to a medical provider in January 2016 his concern about how family could take care of him after a surgery "and do all the stuff he does at his house" (Tr. 790). In June 2016, he similarly reported to that same provider that he cleaned, cooked, and performed household chores after his significant other went back to work (Tr. 775). During the disability period, Plaintiff also testified that although he slipped and fell after setting it down, he was able to lift a fifty-pound bag from a vehicle, carry it up the stairs of a house, and set it on the front porch (Tr. 59–60).[8] *See, e.g.*, *Simmons*, 2015 WL 7758373, at *3 (holding an obese plaintiff with degenerative knee issues who was required by doctor to use an assistive device did not demonstrate an inability to ambulate under Listing 1.02 because she could not demonstrate she was unable to independently initiate, sustain, or complete activities); *Id.* at ECF No. 18-3, Tr.13–14 (ALJ found that, although the plaintiff was limited in performing the reported activities, she was able to do household chores, shop, and run errand). *Accord Landreth v. Colvin*, No. 3:14-CV-05085-MDH, 2015 WL 3604244, at *3 (W.D. Mo. June 8, 2015) (despite

---

404, Subpart P, App. 1, § 1.00(B)(2)(b)(2). However, this is just one of a variety of daily activities that factored into the ALJ's decision.

[8] The Court also takes note of the fact that Plaintiff's previous employment positions were not terminated due to physical limitations or ambulatory restrictions (Tr. 70, 88). *See, e.g., Wegmann*, 2012 WL 6892804, at *9 (noting that most of the plaintiff's prior employment positions were not terminated because of her physical limitations in analysis when holding that the plaintiff could not demonstrate the inability to walk ineffectively under Listing 1.02). Moreover, although Plaintiff's knee became impaired in 1989 while he was in high school and he has a history of obesity, he was able to work jobs he described as "hard physical jobs" up to 2011, when he quit his job as a bouncer (Tr. 54–55, 67, 88). In 2012 and 2013, when his previously denied disability application was pending, Plaintiff reported working (Tr. 133). In the current case, Plaintiff did not say when asked by the ALJ whether something of medical importance happened in July 2014, the alleged onset date in this case, which is also the day after Plaintiff was denied disability based on a previous application (Tr. 52–53, 54–55). *See Schultz v. Astrue*, 479 F.3d 979, 982–83 (8th Cir. 2007) (citations omitted) ("Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work.").

difficulties walking on uneven surfaces and having a BMI of 83.7, the plaintiff's ability to typically travel alone and carry out routine activities such as shopping and banking without assistance demonstrated he was not incapable of ambulating effectively under Listing 1.02).

The Court will also briefly address Plaintiff's conclusory argument that he meets the definition of § 1.00(b)(2)(b)(2) because the ALJ's RFC included a limitation that he should not ambulate over uneven surfaces without an assistive device or over slippery surfaces at all (Doc. 12 at 11; Tr. 16). First, the example provided in the listing does not require a claimant to ambulate over rough or uneven surfaces without the use of any assistive device. Second, Plaintiff cites to no evidence demonstrating a medical professional has imposed any restrictions on his ability to ambulate over such surfaces or on steps. *See Schultz*, 479 F.3d at 982 (noting doctors never imposed any specific limitation on the plaintiff's ability to walk on rough or uneven surfaces). While Plaintiff has a ramp at his house, he stated in his function report and testified that he can use stairs with a handrail (Doc. 12 at 12; Tr. 59–60, 95, 328). *Accord Coolley*, 2016 WL 1171519, at *5 (ALJ properly found Listing 1.02 not met when the plaintiff was able to move slowly from room to room and was capable of slowly walking up a small number of steps with difficulty). Third, as a practical matter, there were still jobs in the national economy that Plaintiff could perform even with these restrictions, which undercuts the argument that such restrictions would render the Plaintiff unable to work (Tr. 22–23, 112–17). Plaintiff does not challenge this finding. *Cf. Dereschuk*, 2016 WL 9454329, at *21 (holding Listing 1.02 not met because an RFC limiting a plaintiff to no standing or working on uneven ground does not mean the plaintiff is incapable of ambulating over uneven ground).

Finally, to the extent Plaintiff identifies additional records that support his allegations, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent

conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

In conclusion, Plaintiff's use of a walker—which by all accounts on the record in front of the ALJ appears to be based on his own decision—does not *ipso facto* establish he has an "extreme" inability to effectively ambulate on a "sustained" basis.  20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00(B)(2)(a), (b).  As a matter of common sense and sound policy, the need for such use must be supported by significant evidence in the record.  Here, it is not.  Although Plaintiff has impairments that affect his ability to ambulate, there is substantial evidence in the record to conclude that Plaintiff's impairments do not render him incapable of ambulating effectively as described in Listing 1.02 and 1.00.  The burden for establishing disability, including at Step 3, is on Plaintiff.  *See Carlson*, 604 F.3d at 593.  And for Step 3, a Listing, it is a particularly high burden.  *See Holtel*, 2015 WL 417534, at *11 (quoting *Sullivan,* 493 U.S. at 532).  In this instance, under the facts of this case, the Court finds Plaintiff has not met this exacting burden.  Therefore, despite any alleged errors in the ALJ's decision, the result would not be different, as there is substantial evidence supporting the ALJ's conclusion.

### 2.  Obesity

Next, Plaintiff argues that because he is "extremely" obese with a BMI in excess of 40, the ALJ failed to properly consider his obesity in combination with other impairments at Step 3 when concluding he was unable to ambulate effectively and did not meet a Listing (*See* Doc. 12 at 12, 14).

The SSA recognizes that "[t]he combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately." 20 C.F.R. § 404, Subpt. P, App'x 1, § 1.00(Q).  *See also* SSR 02-1p, 2002 WL 34686281, at *3

(Sept. 12, 2002). Thus, at all stages of the sequential evaluation process, including the RFC determination, "adjudicators must consider any additional and cumulative effects of obesity." 20 C.F.R. 404, Subpt. P, App'x 1, § 1.00(Q). However, the Eighth Circuit Court of Appeals has held that "[w]hen an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal." *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015) (quoting *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009)).

The Court finds no reversible error in the ALJ's Step 3 analysis. Plaintiff states, in conclusory fashion and without elaboration, that his weight "likely contributed" to his knee pain and instability (Doc. 12 at 9). However, Plaintiff provides no support for this argument. Other than reciting Plaintiff's BMI, Plaintiff cites to no objective or subjective evidence demonstrating that Plaintiff's obesity "increases[s] the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." SSR 02-1p, 2002 WL 34686281, at *5. For example, Plaintiff did not testify at either of his two hearings that his obesity limited or interfered with his ability to ambulate (Tr. 30–121). Moreover, Plaintiff cites to no statements from physicians suggesting that obesity impacted Plaintiff's ability to walk. *See Heintz v. Berryhill*, No. 4:16 CV 1894 ACL, 2018 WL 1211172, at *6–7 (E.D. Mo. Mar. 8, 2018) (ALJ did not err in finding the plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity Listing 1.02 based on obesity when objective medical evidence did not establish an inability to ambulate effectively).[9]

---

[9] Plaintiff cites to *Adams v. Astrue*, No. 4:07CV1041 MLM, 2008 WL 8921916, at *21 (E.D. Mo. July 24, 2008) in support of remand. However, the case does not stand for the proposition Plaintiff claims. The court did not find, as Plaintiff so represents, that remand was necessary because there was sufficient evidence that the plaintiff's weight resulted in an inability to ambulate effectively. *See id*. Instead, the court remanded because the record was insufficiently developed. *See id*. Plaintiff, who has been represented by counsel throughout these proceedings, has not raised any argument in this case that the ALJ improperly failed to develop the record necessitating remand, nor did Plaintiff allege a limitation in function resulting from obesity in his

Plaintiff's argument implies that whenever an individual has an "extreme" BMI over 40, that should automatically result in a finding that the individual is unable to ambulate effectively and meets a Listing based on obesity alone or in combination with other impairments. *Compare* Doc. 12 at 9, 14 *with* SSR 02-1p, 2002 WL 34686281, at *5. However, the Agency's regulations and rulings do not establish a bright-line rule that extreme obesity equates to an inability to effectively ambulate. Plaintiff seems to invite the Court to establish a bright-line rule by reciting Plaintiff's BMI, not citing to anything in the record for further support, and asking for remand. The Court declines to do so. In fact, the agency's policy interpretation ruling specifically states:

> *[W]e will not make assumptions* about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. *We will evaluate each case based on the information in the case record.*

SSR 02-1p, 2002 WL 34686281, at *6 (emphasis added). Here, the ALJ and Court would have to make such assumptions to come to the conclusion Plaintiff so desires. This is not warranted under the law. *See, e.g., Lewis v. Astrue*, No. 4:10CV1131 FRB, 2011 WL 4407728, at *23 (E.D. Mo. Sept. 22, 2011) ("[I]t is plaintiff's burden to establish medical equivalency. Other than the conclusory statement in his brief, he offers no medical evidence to support his statement that the combined effect of his impairments [with obesity] equaled [a musculoskeletal] Listing."). *See also Simmons*, 2015 WL 7758373, at *4 (substantial evidence supported ALJ's determination that the plaintiff's degenerative joint disease in her knees did not meet Listing 1.02

---

application for benefits or at the hearing. Therefore, any such argument is waived. *See Bough v. Berryhill*, 681 F. App'x 561, 561 n.3 (8th Cir. 2017) (citing *Hacker v. Barnhart*, 459 F.3d 934, 937 n.2 (8th Cir. 2006)) (where party does not raise or address issue in brief, issue is waived); *Redus v. Colvin*, No. 1:15 CV 169 JMB, 2016 WL 3913760, at *8 n.9 (E.D. Mo. July 20, 2016) (issue not raised in brief is waived). *Cf. Peterson v. Colvin*, No. 13-0329-CV-W-ODS, 2013 WL 6237868, at *4 (W.D. Mo. Dec. 3, 2013) ("It is Plaintiff's burden to demonstrate she is disabled. Plaintiff cannot avoid this obligation by claiming the absence of evidence requires the Commissioner to prove she is not disabled.").

when considered in combination with obesity and other impairments because medical records demonstrated normal range of motion, normal muscle strength, and normal reflexes).

The ALJ properly discussed obesity at Step 3 (Tr. 14). After considering SSR 02-1p and acknowledging obesity may exacerbate limitations relating to weight-bearing joints, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listing (Tr. 13). The ALJ also recognized that despite Plaintiff's obesity, normal medical findings indicated Plaintiff continues to move around on a fairly regular basis (Tr. 18). "Because the ALJ specifically took [Plaintiff's] obesity into account in his evaluation, we will not reverse that decision," particularly since Plaintiff has not offered evidence that his obesity made the other impairments so severe that he met a Listing. *Heino*, 578 F.3d at 881–82 (summarily affirming ALJ's decision when ALJ referenced the plaintiff's obesity or weight in various parts of opinion); *see also Karlix v. Barnhart,* 457 F.3d 742, 746 (8th Cir. 2006) ("[t]he fact that the ALJ did not elaborate on this conclusion does not require reversal, because the record supports her overall conclusion.").

**B. The Remaining Listing 1.02(A) Elements**

While neither party clearly raises or addresses the issue, even if Plaintiff could establish an inability to ambulate effectively, the Court is not convinced that Plaintiff has met his burden of proving all of the four required elements of Listing 1.02. *See Igo*, 839 F.3d 724, 729 (8th Cir. 2010) (impairment must meet all of the specified criteria to meet a Listing). Specifically, there does not seem to be any evidence of a gross anatomical deformity. 20 C.F.R. Part 404, Subpart P, App. 1, § 1.02(A) ("Characterized by [1] gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) . . . ."). The Regulations do not define "gross anatomical deformity," so the Eighth Circuit has given the term its ordinary meaning. *Igo*, 839

F.3d at 729. If a deformity is not "coarse or large" and "visible to the naked eye without magnification," it does not qualify as gross under Listing 1.02. *Id*. Joint instability, alone, is not enough to qualify as "gross." *See id*. (holding instability resulting from severe degenerative hip changes and joint space narrowing on X-rays did not qualify as "gross," reasoning that because the "impairments were discovered through radiographic studies and were not obvious to the naked eye, there is at least substantial evidence supporting the conclusion that [the plaintiff] did not suffer from a gross anatomical deformity.").

Here, Plaintiff has not provided any evidence that Plaintiff's knee impairment resulted in any deformity at all, and certainly not any one that was coarse or large or otherwise recognizable to the naked eye. Instead, Plaintiff seems to concede there is none (Doc. 12 at 13–14). Plaintiff *sua sponte* raises *Igo* in his brief and tries to distinguish it in support of his argument (Doc. 12 at 13–14). In doing so, Plaintiff argues in passing that Plaintiff has a "combination of impairments that equal in severity to the criterion of gross anatomical deformity" (*Id*.). Plaintiff's position, however, does not seem to be consistent with the law. As the Eighth Circuit explained in *Igo*, "[a] claimant can establish equivalency if the claimant has 'a combination of impairments, no one of which meets a listing,' and the findings related to that combination 'are at least of equal medical significance to those of a listed impairment.'" *Igo*, 839 F.3d at 730 (quoting 20 C.F.R. § 404.1526(b)(3)). However, "[t]o establish equivalency, a claimant must present medical findings equal in severity to all the criteria for the one most similarly listed impairment." *Igo*, 839 F.3d at 730 (internal quotations omitted) (quoting *Carlson*, 604 F.3d at 594, and *Sullivan*, 439 U.S. at 531).

Plaintiff neither identifies which of the several listed impairments is the "one most similarly listed" nor explains why the medical findings are equal in severity to all the criteria for

the unidentified similarly listed impairment (*See* Doc. 12 at 13–14). To the extent Plaintiff

suggests all of the noted impairments medically equal Listing 1.02(A) in combination, the Court

is not persuaded. Plaintiff provides no explanation, and the Court further rejects this argument

for the reasons stated above. *See Igo*, 839 F.3d at 729–30 (rejecting argument that the

"multitude" of the plaintiff's "maladies" rendered him unable to ambulate effectively because it

was undermined by evidence in the record); *Kentch v. Berryhill*, No. 1:15-CV-00193-AGF, 2017

WL 3873103, at *6 (E.D. Mo. Sept. 5, 2017) (quoting *Sullivan*, 439 U.S. at 531) ("'A claimant

cannot qualify for benefits under the 'equivalence' step by showing that the overall functional

impact of his unlisted impairment or combination of impairments is as severe as that of a listed

impairment.'"). And to the extent Plaintiff suggests that Plaintiff's obesity by itself meets the

Listing under SSR 02-1p (Doc. 12 at 14), that argument also fails for the reasons stated above.

Finally, to the extent Plaintiff implies that the ALJ found Plaintiff to have a gross anatomical

deformity (Doc. 18 at 2), the Court disagrees. The ALJ did not conclude whether Plaintiff

exhibited a gross anatomical deformity, nor was he required to do so to reach his conclusion that

Listing 1.02 was not met. *See Boettcher,* 652 F.3d at 863 ("There is no error when an ALJ fails

to explain why an impairment does not equal one of the listed impairments as long as the overall

conclusion is supported by the record.").

    In conclusion, the Court finds that the ALJ's determination in finding Plaintiff did not

meet Listing 1.02 is consistent with the relevant evidence of record; that the ALJ's step three

analysis is based on substantial evidence; and that Plaintiff's arguments to the contrary are

without merit.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment judgment shall be entered incorporating this Memorandum and Order.

Dated this 20th day of March, 2019.

       /s/ Noelle C. Collins        
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE